## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **1:05-cr-558-WSD-JFK** |
| **JESUS HECTOR FLORES,** **ROMERO ROEL MARTINEZ,** **LUIS FERNANDO TREVINO,** **JOE LOUIS LOPEZ,** **ROBERT GARCIA, and** **FLORENTINO VILLANUEVA-** **CASTILLO** | |
| **Defendants.** | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Magistrate Judge Janet King's Order and

Report and Recommendation [214] ("R&R") concerning various pre-trial motions

filed on behalf of Defendants Jesus Hector Flores ("Flores"), Romero Roel

Martinez ("Martinez"), Luis Fernando Trevino ("Trevino"), Joe Louis Lopez

("Lopez"), Roberta Garcia ("Garcia"), and Florentino Villanueva-Castillo

("Castillo"), particularly Defendants' Motions to Suppress Wiretap evidence [75,

115, 117, 120, 126, 139, and 163]**,** Defendant Villanueva-Castillo's Motions to

Suppress Evidence from 1132 Lakehill Drive [73, 128], Defendants' Motions to

Suppress Evidence from 5040 Erin Drive [81, 90, 114, 121, 125], Defendant

Lopez's Motion to Dismiss Count Nine [149], Defendant Flores's Motion to

Suppress [77], Defendant Lopez's Motions to Suppress Evidence and Post-Arrest

Statements[80, 87], and Defendants' Motions for Disclosure of Confidential

Informants [83, 102, 190].  Objections to the R&R were filed by Flores [220],

Lopez [223, 224], and Castillo [222].

 Also before the Court is Defendant Flores's Motion for Speedy Trial and

Severance of Co-Defendants if Necessary [247].

## I. OBJECTIONS TO THE R&R ON THE PRE-TRIAL MOTIONS

 A. <u>Standard of Review</u>

 With respect to those findings and recommendations to which Defendants

have not asserted objections, the Court must conduct a plain error review of the

record.  <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir. 1983).  The Court

makes  "a *de novo* determination of those portions of the report or specified

proposed findings or recommendations to which objection is made."  28 U.S.C.

§ 636(b)(1)(c).  To be proper, objections to the R&R must be specific.  <u>Slay</u>, 714

F.2d at 1095.  "Frivolous, conclusive, or general objections need not be considered

by the district court."  <u>Nettles v. Wainwright</u>, 677 F.2d 404, 410 n.8 (5th Cir. 1982)

overr'd on other grounds at <u>Douglas v. United Serv's Auto Ass'n</u>, 79 F.3d 1415

(5th Cir. 1996).  <u>See also</u> <u>Uncle Henry's, Inc. v. Plaut Consulting Co., Inc.</u>, 399

F.3d 33, 42 (1st Cir. 2005) (refusing to consider objections presented "at so high a

level of generality, and in such an all-or-nothing manner, as to render any

individualized assessment of each of the magistrate judge's specific rulings an

exercise in guesswork.")

     In the present case, only Defendants Flores, Lopez, and Castillo objected to

the R&R.  Defendants Flores and Castillo do not object to the Magistrate's findings

of fact.  Defendant Lopez objects to the R&R by stating, "Defendant objects to the

magistrate judge's findings of fact and conclusions of law made in determining all

of his motions."  Lopez then asserts his "original motions and relating briefs [and] .

. . those motions and briefs adopted by him, and incorporating such herein by

reference."  Lopez does not state any specific, particular objection to any fact or

legal finding in the R&R.  Lopez does not indicate any specific fact finding to

which he objects.  In the absence of any objection to any specific finding of fact in

the R&R, the Court reviews the R&R's fact findings only for plain error.

     The Defendants also object generally to the R&R's conclusions of law.

Instead of indicating any specific finding of law to which they object, Defendants

simply assert conclusory blanket objections to the R&R's legal conclusions. 28 U.S.C. § 636(b)(1)(c) requires *de novo* review only when objection is made to specific conclusions or findings. Although Defendants' general and unspecific objections justify a plain error review of the R&R's legal findings, the Court elects to conduct a *de novo* review. For the reasons set forth below, the Court finds that the R&R's conclusions are correct, and adopts the R&R as its order.

B.   <u>Motions to Suppress Wiretaps</u>

The first set of motions addressed by the R&R are motions to suppress evidence obtained by the government pursuant to the execution of ten wiretap orders signed by judges in this district.

1.   *<u>Specificity</u>*

"A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." <u>United States v. Cooper</u>, 203 F.3d 1279, 1284 (11th Cir. 2000) (citation and quotation omitted). "A court need not act upon general or conclusory assertions." <u>Id.</u> (citation and quotation omitted).

Defendant Lopez adopted the motion to suppress wiretap filed by Defendant Villanueva-Castillo. This motion, as the R&R notes, presents only "perfunctory"

arguments that are manifestly insufficient to enable the court to conclude that the Defendants present a substantial claim.  Lopez, in his objections, does not offer any further specificity or detail to supplement the conclusory motion.  The R&R found that these motions should be dismissed.  The Court agrees.

2.    *Standing*

Standing for purposes of challenging a wiretap is evaluated using the standing principles for Fourth Amendment claims.  Alderman v. United States, 394 U.S. 165, 176 n.9 (1969).    "[O]nly an aggrieved person . . . may move to suppress a communication that was unlawfully intercepted."  United States v. Faulkner, 439 F.3d 1221, 1223 (10th Cir. 2006) (citation and quotation omitted).  A defendant has the burden of proof of showing standing under the Fourth Amendment standard.  United States. v. Brazel, 102 F.3d 1120 (11th Cir. 1997).  To have standing, a defendant must show: "(1) he was a party to the communication, (2) the wiretap efforts were directed at him, or (3) the interception took place on his premises."  Faulkner, 439 F.3d at 1223.  Standing is not conferred on co-conspirators or co-defendants who are not parties to or targets of the intercepted communications, merely because they are implicated by the evidence obtained

during the surveillance.  United States v. Fredericks, 586 F.2d 470, 480 (5th Cir. 1978).

The R&R found that all Defendants except Lopez have failed completely to establish standing to challenge the wiretap orders.  Lopez was the only Defendant to argue that he was aggrieved by the wiretap orders.  Because Lopez was the only defendant who attempted to meet that burden, the Court finds no plain error in the R&R's finding that the unobjecting Defendants lacked standing to challenge the wiretap orders.  As to the objecting Defendants, the Court finds that Flores and Castillo failed substantially to show standing to challenge the wiretaps.  Accordingly, the R&R's denial of their motions to suppress was proper.

Defendant Lopez identified the wiretap orders for target telephones no. 6, 10, 17, and 20 as directed at him personally.  The R&R chose to "assume at least one Defendant for each wiretap order is an 'aggrieved person'" for the sake of resolving the pending motions.  The R&R's analysis demonstrated that even putting the standing issue aside, the wiretap orders are valid.

3.    *General Warrants*

Defendants argue that the warrants submitted to obtain the wiretap orders lack particularity and thus constitute general warrants in violation of the Fourth

Amendment.  Federal courts have held that applications for wiretaps orders are sufficiently particular if they identify target phones by their electronic serial numbers and telephone numbers.  United States v. Duran, 189 F.3d 1071, 1086 (9th Cir. 1999);  United States v. Goodwin, 131 F.3d 132 (2d Cir. 1997) (unpub.).

In the R&R, the Magistrate Judge found as a matter of fact that each wiretap order identified a particular phone by telephone number and International Mobile Subscriber Identity Number, which is sufficiently similar to an electronic serial number to permit reliable identification.  The Court finds no plain error in this factual finding.  The telephones were identified with sufficient particularity to satisfy the law.

4.    *Timely Sealing*

Defendants argue that the evidence from wiretaps no. 1-6 was not timely sealed as required by 18 U.S.C. § 2518(8)(a).  18 U.S.C. § 2518(8)(a) requires: "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions."  The Eleventh Circuit has held that the statute's requirements are met if the recordings "are sealed within one or two days of the expiration" of the order authorizing the wiretaps.  United States v. Matthews, 431 F.3d 1296,

-7

1307 (11th Cir. 2005).  Courts in this circuit have found as many as three days between expiration of the order and sealing acceptable.  United States v. Harvey, 560 F. Supp. 1040, 1057 (S.D. Fla. 1983).  In determining the passage of time between the expiration of the period an order and the date of sealing, the Court should count only business days, as "weekends and holidays present legitimate obstacles to the sealing of tapes."  United States v. Wong, 40 F.3d 1347, 1375 (2d Cir. 1994).

The R&R found as a matter of fact that each of the wiretap recordings were sealed within one business day, and within three week days, of the expiration of the order that authorized them.  The Court finds no plain error in this determination, and, based on it, finds that the recordings were timely sealed.

     5.    *GPS Information*

Wiretap orders no. 1, 3, 5, and 6 contained provisions not only for recording incoming telephone calls to the subject phones, but also for obtaining Global Position System ("GPS") or other cell site information to identify the location of the target telephones.  Defendants argue that no statute authorizes such cell site information, as cell site data is not the "contents" of a wire communication, which the Act defines as "any information concerning the substance, purport, or meaning

of that communication."  18 U.S.C. § 2510(8).  Defendants argue that cell site information can only be obtained on a showing of probable cause.  Defendants also argue that the government violated the Electronic Communications Privacy Act by intercepting electronic communications from the target telephones illegally or by improperly using pen registers to locate target phones.

The government argues that no GPS data was obtained through the wiretaps, and that the only cell site data obtained was validly obtained as a user record from the phone company pursuant to 18 U.S.C. § 2703.

 "[I]nformation obtained from a pen register . . . can be used as evidence in a criminal trial even if a court order authorizing its installation does not comply with the statutory requirements."  United States v. Thompson, 936 F.2d 1249, 1249-50 (11th Cir. 1991).  Further, "installation of a pen register does not constitute a search under the Fourth Amendment of the Constitution and does not warrant invocation of the exclusionary rule."  Id.

Title III allows suppression of the illegally intercepted contents of any "wire or oral" communication.  18 U.S.C. § 2518(10)(a).  Suppression is not an appropriate remedy for illegal interception of an electronic communication unless

the violation rises to a constitutional level.[1]  Using cell site data to obtain a rough

area of location for a target telephone is not a constitutional violation unless the

information obtained pinpoints the target phone's location to a place where the

subject has a legitimate expectation of privacy.  United States v. Forest, 355 F.3d

942, 949-50 (6th Cir. 2004), vacated on other grounds at Garner v. United States,

543 U.S. 1100 (2004).

The R&R found as a matter of fact that the government did not obtain any

GPS data, and the Court finds no plain error in this conclusion.  As to cell site data,

Defendants admit that any cell site data obtained only located the target telephone

to an area within a three-mile radius of one cellular phone tower.  The cell site data

obtained could not pinpoint the target phone's location to any specific place where

any Defendant had a legitimate expectation of privacy.  Accordingly, no Fourth

Amendment violation occurred.  Thus, even assuming the cell site data was

obtained improperly, suppression is not an appropriate remedy.

---

[1] Even if the Court construed the cell phone in question as a "tracking device" under 18 U.S.C. § 3117, suppression is an inappropriate remedy for mere violation of the statute without a further constitutional violation.  United States v. Gbemisola, 225 F.3d 753, 757-58 (D.C. Cir. 2000).

6.     *Probable Cause*

Defendants next challenge the wiretaps for target telephones no. 10, 17, 18, 19, and 20 by contending the affidavits in support of the wiretap requests lacked probable cause.  The government argues that each of the wiretap order supporting affidavits demonstrates probable cause.

As a condition to authorizing a wiretap, Title III requires that "an application must include a full and complete statement of the facts and circumstances relied upon by the applicant . . . including (i) details as to the particular offense that has been, is being, or is about to be committed . . . ."  18 U.S.C. § 2518(1)(b).  District court judges must find, under the totality of the circumstances, that "there is probable cause that the sought-for evidence will be obtained."  United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990).  "Courts . . . should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed . . . ."  United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994).  Defendants bear the burden of overcoming a wiretap order's presumptive validity.  Nixon, 918 F.2d at 901.

The magistrate judge found as a matter of fact that the affidavits supporting the wiretap requests showed a significant nexus between the target telephones and

the criminal activity being investigated.  The R&R specifically found that the

affidavits demonstrated that a user of telephones 10 and 20 was Defendant

Martinez.[2]  There is no plain error in this conclusion, and the Court necessarily

concludes that probable cause existed to issue the wiretap orders.

      7.    *Necessity*

Defendants next argue that the wiretap applications for the target phones fail

to establish that the government exhausted traditional investigative techniques

before seeking to conduct electronic surveillance.  Title III requires that

applications for wiretaps contain a full and complete statement as to whether other

investigative procedures have been tried and failed or why other procedures appear

unlikely to succeed.  18 U.S.C. § 2518(1).  Wiretap applications need only to show

that ordinary means of investigation have failed, are reasonably expected to fail, or

are too dangerous; they do not need to demonstrate the exhaustion of all possible

techniques.  Nixon, 918 F.2d at 901.  The necessity of a wiretap order is evaluated

in light of the scope of the goals and course of the investigation. United States v.

Sobamowo, 892 F.2d 90, 93 (D.C. Cir. 1989).  Wiretap orders are presumptively

---

[2] Defendants admit in essence that probable cause exists if there is a connection between the phones and Defendant Martinez.

valid, and defendants bear the burden showing that the necessity provisions were

not met.  Mitchell, 274 F.3d at 1310.

The R&R found as a matter of fact that the affidavits supporting the wiretap

applications "discussed the various traditional investigative techniques that had

been tried as of that stage of the investigation . . . with the results achieved by the

use of those techniques, and updated the information based on the results of the

investigation to date.  The affidavits also included a statement of reasons why

continued use of the various investigative methods would not achieve the goals of

the investigation . . . ."  The R&R found that the affidavits set forth "the reasons

why . . . other investigative techniques, such as use of the grand jury, undercover

agents introductions and/or drug buys, and witness interviews, would not achieve

the goals of the investigation if tried."  The R&R further found that the drug

enterprise under investigation was secretive and compartmentalized, engaging in

sophisticated counter-surveillance such that:

> none of the informants could identify the sources of
> supply or those in the upper hierarchy of the
> organizations and could not, more importantly, contact
> those individuals, could not identify all of the locations
> utilized by the organizations or all of the participants in
> the organizations, and could not discover the methods of
> operation, either in importing, storing and distributing

-13

drugs or in collecting and redistributing drug proceeds,
for the organizations.

(R&R at 37.)

Defendants assert only generalized, unspecific allegations that the necessity requirement has not been met. The Defendants do not point out any specific deficiency in the content of the affidavits. The Court finds no plain error in the R&R's findings of fact, and the facts demonstrate that traditional methods of investigation had or were reasonably likely to fail, and thus that electronic surveillance was necessary.

8.    *Materially False Representations in Affidavits*

Defendants next object to the R&R's finding that the affidavits did not contain materially false representations respecting the showing of necessity. If a Defendant makes a substantial preliminary showing that an affidavit supporting a wiretap application contained a knowing or intentional falsehood, or was written with a reckless disregard for the truth, and that the falsehood was material to granting the wiretap, the Fourth Amendment requires the Court to hold a hearing to determine the admissibility of the evidence gathered based on the wiretap. Franks v. Delaware, 438 U.S. 154, 171-72 (1978). The same standard applies if the defendant makes a substantial showing that the affidavit contains "misinformation"

-14-

by omission "made intentionally or with reckless disregard for the accuracy of the affidavit." Madiwale v. Savaiko, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (citation and quotation omitted). "Omissions that are not reckless, but are instead negligent . . . will not invalidate a warrant." Id. The "substantial showing" required by Franks "must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for truth, and those allegations must be accompanied by an offer of proof . . . point[ing] out specifically the portion of the affidavit that is claimed to be false . . . ." Franks, 438 U.S. at 171-72.

Defendants' attack on the affidavits is not specific, and was not accompanied by an offer of proof. Defendants allege, *in toto*:

> the affiants misrepresented and omitted the full nature and success, potential and realized, of the CI's throughout this case. Agents downplayed the potential success of CSI and CS2/CS to obtain the initial wiretaps . . . . The affiant further omitted the continued use and success of CS/CS2 in subsequent wiretap applications regarding the ability of CS/CS2 to discover the organizations sources of supply . . . .

As the R&R notes, this allegation is generalized and does describe out any specific falsehood. At most, Defendants allege a vague and generalized omission concerning the "effectiveness" of the confidential informants. The magistrate

-15

judge "reviewed all of the DEA-6's submitted by Defendants and compared the details therein with the affidavits . . . ."  After this review, the R&R found as a matter of fact "no material misrepresentations as to the nature and scope of CS2's actual or potential cooperation when considered in light of the goals of the investigation."  The Court finds no plain error in this finding of fact.

Defendants also fail to make the required preliminary showing of materiality.  Given the R&R's findings of fact regarding the limited effectiveness of informants and the sophisticated counter-surveillance faced by law enforcement in this matter, the Court does not see how the alleged omission could be material.  Defendants also do not make the required preliminary showing of intentionality or recklessness, and they do not accompany their allegations with an offer of proof. The R&R correctly concluded that Defendants manifestly failed to meet their burden of production on this issue.

Defendants also claim that the affidavit for the wiretaps on target telephones no. 17, 18, 19, and 20 contain intentional or reckless omissions regarding the effectiveness of informant T-CS.  The affidavit sets forth the limits on T-CS's ability to penetrate the drug organization, but omits mention of a telephone call from Defendant Martinez to T-CS requesting T-CS to transport a vehicle from San

-16-

Antonio to Atlanta.  The R&R concluded that "there was no reason to hide from the District Judge the fact that T-CS drove a vehicle from San Antonio to Atlanta for Martinez which had been outfitted with a tracking device." (R&R at 52.)  The R&R found that "T-CS's role as a courier, a rather low-level position in a multi-district international drug trafficking organization, is not likely to introduce him to the Mexican sources of supply or other high-level members of the organization and is not likely to give him insights into the organization's upper level operations." (Id. at 52-53.)  The Court finds no plain error in this finding.  The Court finds that T-CS's role as an occasional courier for Martinez was not material to the need for electronic surveillance in light of T-CS's lack of access to information and people required by the scope of the investigation.  The Court also notes that Defendants failed to present an offer of proof regarding this alleged omission.

         9.    *Good Faith*

The R&R found that, even if errors were made in the wiretap orders, applications, or supporting affidavit, they were made in good faith such that the fruits of the wiretaps should not be suppressed.  Even if a warrant is defective, the exclusionary rule does not apply if the warrant was issued and executed in good faith.  United States v. Leon, 468 U.S. 897, 923 (1984).  The good faith exception

does not apply where "the issuing magistrate wholly abandoned his judicial role" or where "a warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . ." United States v. Accardo, 749 F.2d 1477, 1480 n.4 (11th Cir. 1985) (quotation and citations omitted).

As noted above, the wiretap orders here were reasonably particular and did not lack probable cause.  Defendants do not make any showing that the jurists who issued the warrants abandoned their judicial role in evaluating the applications. Even assuming the warrants suffered technical defects, the exclusionary rule does not apply.

C.    Motion to Suppress Evidence from 5040 Erin Road

Defendants Martinez, Lopez, and Garcia seek to suppress evidence, including 120 kilograms of cocaine, $1.5 million in currency, firearms, documents, cellular phones, and cars, seized from 5040 Erin Road on November 15, 2005.  The R&R found that this motion to suppress should be denied.  Defendant Lopez objected to the conclusions of law in the R&R, but did not assert proper, sufficient, specific objections to the conclusions of fact.  The Court finds no plain error in the R&R's findings as to Defendants Martinez and Garcia.  After reviewing the

-18-

findings of law in the R&R *de novo*, the Court adopts its findings and

recommendations as to Lopez.

        1.     *Probable Cause*

Lopez first argues that the affidavit supporting the warrant to search the

residence of 5040 Erin Road lacked probable cause.  When reviewing a warrant

application, a district court judge is "simply to make a practical, common sense

decision whether, given all the circumstances . . . including the 'veracity' and the

'basis of knowledge' of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular

place."  United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (citation

and quotation omitted).  The probable cause determination is made based on "the

totality of the circumstances."  United States v. Brundidge, 170 F.3d 1350, 1352

(11th Cir. 1999).  Affidavits should be considered as a whole, and judges should

avoid "judging bits and pieces of information in isolation."  Massachusetts v.

Upton, 466 U.S. 727, 732 (1984).

The R&R found as a matter of fact that the affidavit, taken as a whole,

established that significant drug activity was taking place at 5040 Erin Road, that

the Defendants, including Lopez and Martinez, were using cell phones targeted by

wiretaps to engage in coded discussions of this drug activity, and that Defendants's activity and conversations were suggestive of transporting or storing drugs at 5040 Erin Road.  The affidavit specifically recounted several occasions where, in the opinions of experienced DEA agents, vehicles left 5040 Erin Road to attend events consistent with large drug transactions at the Atlanta Gateway Industrial Park.  The wiretap and cell phone user records also showed that Martinez was located within 3 miles of the residence at 5040 Erin Road on November 14, 2005, the date of one of these apparent transactions, and his vehicle was observed parked at 5040 Erin Road.  The affidavit stated and the R&R further found that several of the intercepted coded communications referred to 5040 Erin Road in a manner consistent with its use as a site of drug activity or storage.

The R&R adopted this account as its finding of fact.  The Court finds no plain error in this finding.  Based on these facts, the affidavit demonstrates

-20

probable cause that 5040 Erin Road was the site of ongoing drug activity.[3]

The warrant was thus supported by probable cause.

### 2.   *Material Misrepresentation or Omission*

Defendant Lopez next objects to the R&R's finding that the affidavit

supporting the search of 5040 Erin Road did not contain any material

misrepresentations or omissions.   Lopez asserts only a generalized argument that

the affidavit at issue "is replete with inaccurate and misleading information,

resulting in the issuance of the search warrant without probable cause."  If a

defendant makes a substantial preliminary showing that an affiant seeking a

---

[3] Defendants also attack the credibility of the affiant.  The affiant was a government law enforcement agent who stated at the outset of the recitation of facts that the information in the affidavit was based on her personal observation. The affidavit contains her observations, occasionally supplemented by the surveillance or observations of other agents.  Disclosures of this nature are adequate for a judge "to make an independent probable cause determination." United States v. Kirk, 781 F.2d 1498, 1505 (11th Cir. 1986).  The Court similarly rejects Defendants' contention that the involvement of contract interpreters in providing the affiants with translations of the conversations intercepted by the wiretaps, which were in Spanish, affects the probable cause analysis.  There is a "presumption of reliability to information based on statements by government officials . . . . based upon the belief that facts gathered in the course of an investigation are unlikely to be based upon mere speculation or tainted by personal involvement with the suspect."  United States v. Reed, 700 F.2d 638, 642 (11th Cir. 1983).  Defendant Lopez does not offer any basis in his objection to overcome the presumption of reliability the Court accords to the interpretations obtained by the DEA.

warrant made a material false statement knowingly, intentionally, or with reckless disregard for the truth, and that statement was necessary to the finding of probably cause, the Fourth Amendment requires that a hearing be held to determine the admissibility of the fruits of the warrant.  Franks, 438 U.S. at 171-72.

The R&R found, with one exception, that the affidavit was factually accurate.  The R&R found one minor factual inconsistency in the affidavit.  The affidavit alleged that during surveillance conducted on October 31, 2005, agents followed vehicles from 5040 Erin Road to an apparent drug transaction, and then followed the vehicles back to 5040 Erin Road.  In a DEA-6 cited by Defendants, however, a DEA Special Agent indicates that surveillance was terminated that day prior to the vehicles returning to 5040 Erin Road.  The Court finds no plain error in the R&R's finding of fact, including the existence of this discrepancy.

Defendant Lopez does not show that the discrepancy between the affidavit and the DEA-6 report was intentional or material to the probable cause determination.  Defendants do not dispute that DEA agents saw vehicles depart from 5040 Erin Road and travel to Atlanta Gateway Park for apparent drug transactions on several occasions, or that 5040 Erin Road was referred to in coded communications intercepted by the wiretaps.  That evidence alone provided

probable cause for the warrant to issue.  The affidavit's incorrect statement that

the vehicles had also been observed returning to 5040 Erin Road was unnecessary

to support probable cause, and thus, even if that statement was inaccurate, it was

immaterial.  Lopez also failed to accompany his <u>Franks</u> challenge with proof or an

offer of proof.

3. *Knock and Announce*

Defendants next contend that the officers executing the search of 5040 Erin

Road violated the knock-and-announce rule, and thus the fruits of the search

should be suppressed and Count Nine of the indictment, charging Defendant

Lopez with possession of the handgun found during execution of the search,

should be dismissed.

It is well settled that the exclusionary rule does not apply to violations of

the "knock and announce" provision.  <u>Hudson v. Michigan</u>, –US–, 126 S. Ct. 2159

(2006).  Thus, even if and the officers in this case violated the knock and

announce rule in the search of 5040 Erin Road, suppression of the fruits of the

search is not appropriate.

Defendant Lopez offers no legal authority for the proposition that a violation of the knock-and-announce rule can serve as the basis for dismissing portions of the indictment.

"Under Fed. R. Crim. P. 12(b), an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment however, on a determination of facts that should have been developed at trial." United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) (quotation and citation omitted).  A court can dismiss an indictment based only on "(1) a legal infirmity or defect in the charging instrument; or (2) a purely legal question, such as a determination that the statute is unconstitutional."  United States v. Ferguson, 142 F. Supp. 2d 1350, 1354 (S.D. Fla. 2000).

Lopez does not demonstrate a legal infirmity in the indictment, nor does he state a pure question of law.  He contends that he brandished a weapon in defense of his home because the failure to knock led him to believe temporarily that the police officers were in fact home invaders.  Lopez's belief as to the identity of the law enforcement officers as he pointed a gun at them is an issue of fact.  Lopez's argument suggests at most a fact issue bearing on his intent, which may be resolved at trial. This argument does not, however, state a question of law or

infirmity in the charging instrument, and thus does not support dismissing Count Nine of the indictment.

           4.    *Good Faith Exception*

Even if errors were made in the warrant to search 5040 Erin Road, its application, or supporting affidavit, they were made in good faith.  The warrant application did not lack particularity or indicia of probable cause, and there is no evidence that the issuing magistrate abandoned his judicial role.  Suppression is not appropriate.

           D.    <u>Lopez's Motions to Suppress Evidence and Statements</u>

On November 15, 2005, Lopez was arrested at 5040 Erin Road.  After obtaining a warrant to search 5040 Erin Road and a warrant for Lopez's arrest based on an ongoing investigation into drug activity with which Lopez is believed to have been involved, local police officers, assisted by SWAT, engaged in a no-knock entry to 5040 Erin Road.  Law enforcement encountered several Hispanic males, including a heavyset, shirtless man on the second floor wearing black shorts.  The shirtless male had a gun, which he pointed at the officers.  One officer fired three shots, none of which hit the male.  After the shots were fired, SWAT officers fell back to the first floor and directed the second floor occupants to come

out.  Three Hispanic males, including one who was heavyset, shirtless, and wearing black shorts, came down the stairs.  The heavyset, shirtless man in black shorts eventually identified himself as Lopez.  The men, including Lopez, were kept in custody in the kitchen.  Officers did not have weapons drawn, nor did they engage in physical or verbal abuse of Lopez or any of the other occupants.

Officers searched the house and found firearms, including the weapon the heavyset man had pointed at SWAT officers.  They also found cash, 110 kilograms of cocaine, cell phones, including a cell phone associated with Lopez from the wiretap investigation, and a wallet belonging to Lopez.

Later that morning, a law enforcement agent escorted Lopez to the garage of the home to interview him.  He asked Lopez if he spoke English, and Lopez responded that he did.  The agent communicated with Lopez in English during the interview.  Lopez did not appear to have any difficulty understanding or speaking in English.  The agent read Lopez his Miranda rights using a standard form. Lopez acknowledged that he understood his Miranda rights and agreed to answer questions.

Two agents interviewed Lopez for five to six minutes.  The agents spoke in a conversational tone of voice.  The agents' weapons were holstered, and may not

have been visible.  Lopez appeared alert and sober, and his answers to questions were coherent, appropriate, and responsive.  The agents ended the interview when they determined that Lopez was not answering questions truthfully.

       1.    *Motion to Suppress the Firearm*

Lopez argues that evidence he had a firearm at 5040 Erin Road should be suppressed because law enforcement officers lacked probable cause to detain him.  As the R&R notes, the Supreme Court has clearly and repeatedly affirmed the constitutionality of detaining the occupants of a premises during a lawful search.  In Michigan v. Summers, 452 U.S. 692, 705 (1981) the court held that law enforcement officers have authority "to detain the occupants of a premises while a proper search is conducted."  More recently, in Muehler v. Mena, 544 U.S. 93, 98 (2005), the court held, "[a]n officer's authority to detain incident to search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion imposed by the seizure."

As noted earlier in this Order, the search of 5040 Erin Road was conducted pursuant to a valid warrant.  The officers conducting the search thus had "categorical" authority to detain Lopez during the search.

"Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of other was in danger." United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002) (citation and quotation omitted). The R&R found as a matter of fact that "[a]s SWAT entered the residence, Detective Oliver was confronted with an armed Hispanic male." This fact alone established a basis for the officers to believe reasonably that their safety was in danger. The officers were well within their authority to search Lopez and the house. The firearm they found as a result of those searches is thus admissible.

2.    *Motion to Suppress Statements*

Lopez next argues that statements he made to law enforcement officials at 5040 Erin Road should be suppressed because they were not given pursuant to a knowing, voluntary, and intelligent waiver of his Fifth Amendment rights.[4] Lopez argues that the circumstances of his detention, including its three-hour length, being handcuffed without food or water, the firing of shots when officers entered

---

[4] Lopez also argues that his statements should be suppressed because his detention was unlawful. The Court, however, has found that his detention was lawful. This argument fails.

the house, being advised of his rights in English rather than Spanish, and the absence of a written waiver form, discredit any waiver he may have made.

Warnings under <u>Miranda</u> "are required before any statement may be admitted . . . elicited from a person in custody through interrogation."  <u>Endress v. Dugger</u>, 880 F.2d 1244, 1248 (11th Cir. 1989).  "[N]o talismanic incantation" is required to fulfill the requirement of <u>Miranda</u> warning; all that it required is that the warning be "effective."  <u>California v. Prysock</u>, 453 U.S. 355, 359 (1981).  Once a <u>Miranda</u> warning has been given, it "obviates the need for a case-by-case inquiry into the actual voluntariness of the omissions of the accused."  <u>Id.</u>  <u>Miranda</u> rights can only be waived if the waiver was voluntary, knowing, and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

<u>United States v. Barbour</u>, 70 F.3d 580, 585 (11th Cir. 1995) (citation and quotation omitted).

The R&R found as a matter of fact that after 5040 Erin Road was secured, all the law enforcement officers holstered or otherwise put away their weapons. Although shots were fired at Lopez when the police entered the house, they were fired because he was pointing a gun at the officers. After the immediate crisis was defused, no officer pointed a gun or threatened further violence against Lopez, and three hours passed from the time shots were fired until the time Lopez made the statements he now seeks to suppress. During that interval, Lopez was permitted to sit in the kitchen. No physical force beyond the use of handcuffs was exercised against him. Although he was not given food and water, the deprivation was not prolonged and its duration was typical of a normal interval between meals. Lopez was not coerced, nor was he subjected to threats, shouting, or abusive language. Simply put, the facts do not support the claim that Lopez was under any undue duress, coercion, or intimidation.

The R&R found that Lopez was advised orally of his Miranda rights prior to being interviewed. The interview itself was brief. Lopez was not overtly or implicitly threatened during the interview, nor was he subjected to coercion, abusive language, or loud language. As the R&R noted, "coercive conduct simply

does not exist in this case."  Lopez's decision to speak to the officers was voluntary.

Lopez's waiver was also knowing and intelligent.  The R&R found that Lopez was able to converse in English comfortably, that he responded in English appropriately to questions asked in English, and that he understood the questions being asked of him.  The Court finds that Lopez's waiver was knowing, intelligent, and voluntary.

E.     Motions for Disclosure of Confidential Informants

Defendants next move for the disclosure of the identity and related information of the government's confidential informants in this case.  Defendants argue that disclosure is necessary for Defendants to investigate the wiretap and other warrants issued during the investigation.  The government has agreed to the delayed disclosure of three informants.  The R&R denied the motion as to the remaining informants, finding that Defendants had not demonstrated a need for the information.

The government "has the privilege to withhold from disclosure the identity of its informants . . ."  United States v. Gutierrez, 931 F.2d 1482, 1490 (11th Cir. 1991).  This privilege is, however, limited.  Id.  In determining when the

government's privilege must give way to a defendant's right to prepare his

defense, a court must engage in a balancing test, taking into account "the

particular circumstances of each case, . . . the crime charged, the possible

defenses, and the potential significance of the informant's testimony, and other

relevant factors."  Rovario v. United States, 353 U.S. 53, 61 (1957).  The

government's privilege "must give way" if "disclosure is relevant and helpful to

the defense of an accused, or is essential to a fair determination of a cause . . . ."

United States v. Rutherford, 175 F.3d 899, 901 (11th Cir. 1999) (quotations and

citations omitted).  "[T]he rule is well-established that the Government need not

disclose the identity of an informer when the sole purpose to be served is to attack

the probable cause supporting a search warrant."  United States v. Mendoza, 433

F.2d 891, 894 (5th Cir. 1970).

        The R&R found as a matter of fact that only informants T-CS, M-CS, and

New CI provided information or participated in the investigation resulting in any

of the indictments in this case.  "The remaining confidential informants did not

assist in this investigation and were not involved in the investigation of any of the

named Defendants . . . ."  (R&R at 124.)  The R&R further found that the only

claimed relevance of the identity of these informants to the Defendants would be

-32-

to attack the wiretaps or other search warrants in this case.  There is no plain error in these findings.  Attacking a wiretap or other warrant is not a valid ground for disclosure.

The government agreed to disclose the identities of M-CS, T-CS, and New CI, but asked the Magistrate Judge to delay the disclosure until two weeks before trial.  The government submitted a statement of reasons *in camera* to the magistrate court supporting this request.  Delayed disclosure is appropriate if disclosure could endanger the informants.  Gutierrez, 931 F.2d at 1491.  The R&R found as a matter of fact that the government showed sufficient danger to the informants to justify delaying disclosure of their identities.  There is no plain error in this finding.

F.    Motion to Sever

Defendant Lopez moves to sever his case on the grounds that other defendants may make statements that directly inculpate him.   The admission of a confession or other statement inculpating a codefendant violates the Sixth Amendment right to confrontation.  Bruton v. United States, 391 U.S. 123, 128-29 (1968).  "Only those statements made by a non-testifying defendant which directly

inculpate a co-defendant give rise to a constitutional violation." <u>United States v.</u>
<u>Veltmann</u>, 6 F.3d 1483, 1500 (11th Cir. 1993).

The R&R found as a matter of fact that none of Lopez's co-defendants in
this case made any statements that would directly inculpate him.  The R&R also
found that the government had not offered and does not intend to offer at trial any
inculpatory statements by the codefendants in this case.  The Court finds no plain
error in this finding, and, based on the absence of any representation by the
government that it intends to offer any statements by codefendants that would be
inculpatory against Lopez or other codefendants, the Court denies the motion to
sever.[5]

G. <u>Motion to Suppress Evidence Obtained Pursuant to Flores's</u>
<u>November 15, 2005 Arrest</u>

The R&R found that Flores withdrew this motion to suppress and denied it
as moot.  Flores did not object to this finding, and the Court finds no plain error.

---

[5] Defendant Trevino also moved for severance under Rule 14.  The R&R
found that Trevino's motion should be denied due in large part to the extreme
generality of the allegations.  Trevino did not object to the R&R, and the Court
finds no plain error in the holding.

H.     Unobjected to Motions Dismissed by the R&R

After carefully reviewing the R&R, the Court finds no plain error in its on

motions filed or adopted by Defendants Trevino, Martinez, or Garcia.

## II.     MOTION FOR SPEEDY TRIAL AND SEVERANCE

Defendant Flores has filed a demand for speedy trial, and, if necessary,

severance of his co-defendants.  Flores argues that the case was certified ready for

trial on March 23, 2007, but "pretrial delay on this case has been unreasonable and

has been tactically employed by the government to coerce guilty pleas and

cooperation from [Flores's] co-defendants."  (Flores's Mot. for Speedy Trial at 1-

2.)  Flores does not offer any evidence of coercion, nor does he explain how the

pretrial delay to date has been "unreasonable."

On January 17, 2006, Magistrate Judge King orally ruled, with the consent

of the parties, that this case was complex.  Magistrate Judge King ruled that,

pursuant to 18 U.S.C. § 3161(h)(8)(A) and (B), time for computation of the

Speedy Trial Act would be excluded from January 17, 2006 until further order of

the court.  No defendant has objected to this order.

After Magistrate Judge King entered this order, Defendants, including

Flores, filed extensive pretrial motions.  Magistrate Judge King has been required

to hold several evidentiary hearings.  Magistrate Judge King deferred some of the

motions to this Court, and they have yet to be decided.  On March 22, 2007,

Magistrate Judge King entered a Report and Recommendation exceeding one

hundred pages on many of these motions.  At that time, Magistrate Judge King

certified the case as ready for trial, although several pre-trial motions deferred by

the magistrate court are still pending before this Court.

     The Speedy Trial Act provides that a criminal defendant pleading not guilty

is entitled to trial within the later of: (a) 70 days after the date of indictment; or (b)

seventy days from the date the defendant appears in court.  18 U.S.C. §

3161(c)(1). The Speedy Trial Act provides for several exclusions from the

computation of time.  For example, any time during which a pre-trial motion is

pending is excluded from the computation.  Id. at § 3161(h)(1)(F).  This exclusion

includes pre-trial motions deferred by the magistrate judge to the trial court.

United States v. Harris, 376 F.3d 1282, 1288-89 n.5 (11th Cir. 2004).  Also

excluded from computation is a "reasonable period of delay when the defendant is

joined for trial with a codefendant as to whom the time for trial has not run and no

motion for severance has been granted."  18 U.S.C. § 3161(h)(7).  "[I]n a multi-

defendant case, time excluded due to one defendant results in excludable delays

-36-

for his codefendants." <u>United States v. Mejia</u>, 82 F.3d 1032, 1035 (11th Cir. 1996).

It is undisputed that pre-trial motions filed by Flores's codefendants in this case, and specifically by Defendants Trevino, Villanueva-Castillo, Martinez, and Lopez, have been deferred to this Court by Magistrate Judge and remain unresolved. The time that has passed is this excluded from Speedy Trial Act computation not only for these Defendants, but also for Defendant Flores.[6]

Flores seeks severance from his codefendants, apparently to avoid the Speedy Trial clock implications of his codefendants pending pre-trial motions. Federal Rule of Criminal Procedure 14 provides for severance "[i]f the joinder . . . appears to prejudice a defendant or the government . . . ." A court should only sever defendants "when a defendant demonstrates that a joint trial will result in specific and compelling prejudice to his defense." <u>United States v. Liss</u>, 265 F.3d 1220, 1228 (11th Cir. 2001) (citation omitted). Prejudice is "compelling" when "the jury is unable to separately appraise the evidence as to each defendant and render a fair and impartial verdict." <u>Id.</u> (quotation and citation omitted). Showing

---

[6] The government argues alternatively that the Speedy Trial clock is not running because Magistrate Judge King granted a continuance for pre-trial proceedings because this case is "complex" under 18 U.S.C. § 3161(h)(8)(B)(ii).

specific and compelling prejudice "is a heavy burden, and one which mere conclusory allegations cannot carry."  United States v. Adams, 1 F.3d 1566, 1578 (11th Cir. 1993) (quotation omitted).

Flores fails to show that any specific and compelling prejudice will occur if the Court declines to sever his case.  Flores does not claim that, in the absence of a severance, the jury will be unable to make an individualized determination as to his guilt or innocence.  He claims only that without a severance he will not reach trial as soon as he would prefer.  This is not a "specific and compelling" prejudice, and Flores does not offer any authority to support this novel contention. Accordingly, Flores's motion for severance is denied.

## III.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Objections to the R&R [220, 223, 224] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Court **ADOPTS AS ITS ORDER** Magistrate Judge Janet King's Order and Report and Recommendation [214]. Defendants' Motions to Suppress Wiretap evidence [75, 115, 117, 120, 126, 139, and 163] are **DENIED.**  Defendant Villanueva-Castillo's Motions to Suppress

-38-

Evidence from 1132 Lakehill Drive [73, 128] are **DENIED**.  Defendants' Motions
to Suppress Evidence from 5040 Erin Drive [81, 90, 114, 121, 125] are **DENIED**.
Defendant Lopez's Motion to Dismiss Count Nine [149] is **DENIED**.  Defendant
Flores's Motion to Suppress [77] is **DENIED**.  Defendant Lopez's Motions to
Suppress Evidence and Post-Arrest Statements [80, 87] are **DENIED**.

      **IT IS FURTHER ORDERED** that Defendants' Motions for Disclosure of
Confidential Informants [83, 102, 190] be **GRANTED IN PART** and **DENIED
IN PART** consistent with the terms of this Order and the R&R [214].

      **IT IS FURTHER ORDERED** that Flores's Motion for Speedy Trial and
Severance of Co-Defendants if Necessary [247] is **DENIED**.

      **SO ORDERED** this 27th day of September, 2007.

                                          _____

                                WILLIAM S. DUFFEY, JR.
                                UNITED STATES DISTRICT JUDGE